247 S.W.3d 63 (2008)
STATE of Missouri, Respondent,
v.
Mona Leah MILLER, Appellant.
No. WD 67433.
Missouri Court of Appeals, Western District.
March 4, 2008.
Before HOLLIGER, P.J., LOWENSTEIN and NEWTON, JJ.

ORDER
PER CURIAM.
Mona Miller appeals her conviction, after a jury trial, for unlawful use of a weapon, Section 571.030 RSMo (Cum. Supp.2005), for which she was sentenced to a term of nine months. Miller contends that the evidence was insufficient to sustain her conviction for shooting into a dwelling as she only shot at the door of a trailer, striking the door in two places. Miller's interpretation of the statute would require, to sustain a conviction, evidence that the projectile penetrated into the dwelling itself. Such an interpretation of Section 571.030 is unsupported by the plain and ordinary words of the statute. As a lengthy Opinion would serve no jurisprudential purpose, the parties have been provided with a memorandum of the reasoning of the court.
Judgment affirmed. Rule 30.25(b).

MEMORANDUM SUPPLEMENTING ORDER AFFIRMING JUDGMENT PURSUANT TO RULE 30.25(b)
This memorandum is for the information of the parties and sets forth the reasons for the order affirming the judgment.

*64 I. FACTUAL AND PROCEDURAL BACKGROUND
Early on the morning of August 7, 2003, Mona Miller returned unexpectedly from out of town to find her property in disarray. Miller had expected to be absent from her home for a year, and had left the property in the care of her cousin, Royetta Moore. The property consisted of a ten-acre farm on which two trailers resided. Miller's mother resided in one of the trailers, while Moore and Moore's son, Anthony Gerloff, resided in the second trailer. Miller concluded from the condition of her property, that Moore had not maintained the property during her absence eight-week absence.
Moore and Gerloff were inside the trailer when Miller returned. Miller began yelling that she wanted Moore off the property. She knocked over the stairs leading to their trailer. Moore locked the trailer doors and called the police and her sister. While Moore waited for her sister to arrive, Miller was running about the yard, pulling up flowers and cutting down fruit trees and piling them in the driveway.
Moore's sister arrived with her sons. They up righted the overturned stairs while Moore got into her sister's van. Moore's son, Gerloff, remained in the trailer, locking the doors after Moore left.
Moore and her sister watched Miller make numerous attempts to enter the trailer. She tried both the front and back doors, and attempted entry through a window. When these attempts failed, Miller returned to her mother's trailer, returning with a key and a rifle. When the key would not work, Miller propped open the screen door and took two shots at the lock on the front door. The shots entered the front panel of the door, one below the doorknob and one below the deadbolt, but did not penetrate through the door into the interior of the trailer. Gerloff did not see the shooting, having retreated to the bathroom.
A short while later, two deputies from the Moniteau County Sheriffs Department arrived at the property. Miller showed a deputy the rifle, a Browning 22 semi-automatic that she had broken apart after the shooting, and told him that she had fired "two well placed shots at the lock."
Miller was subsequently charged with unlawful use of a weapon, shooting a firearm into a dwelling house, in violation of Section 571.030. A jury found Miller guilty on May 2, 2006, and she was sentenced to a term of nine months. This appeal followed.

II. ANALYSIS
In her sole point, Miller claims the evidence at trial was insufficient to support her conviction for violating Section 571.030. This court reviews a challenge to the sufficiency of the evidence supporting a criminal conviction to determine whether there was sufficient evidence "from which a reasonable juror might have found the accused guilty beyond a reasonable doubt." State v. Williams, 18 S.W.3d 425, 427 (Mo. App.2000). This court will accept as true all evidence favorable to the State, and the reasonable inferences therefrom, disregarding evidence "to the contrary, and will not weigh the evidence." Id.
Section 571.030.1(3) provides that a person is guilty of unlawful use of a weapon if she knowingly "[discharges or shoots a firearm into a dwelling house." Miller argues that the evidence was insufficient to establish that she shot into a dwelling in that the bullets "did not penetrate the door or lodge in the door jamb." She argues that the distinction in this case turns on the meaning of "`into,'" the use of the word "into" requiring evidence that the bullets penetrated through the door and into the airspace of the dwelling.
*65 When engaged in statutory interpretation, this court looks to the plain and ordinary meaning of the words of the statute, State v. Daniel, 103 S.W.3d 822, 826 (Mo. App.2003). "When a statutory term is undefined, we must apply its common sense) dictionary meaning, in the absence of an indication of special use." State v. Stallings, 158 S.W.3d 310, 313 (Mo.App.2005). Thus, this court may look to a word's dictionary definition to determine its plan and ordinary meaning. Daniel, 103 S.W.3d at 826.
The term "into" does not, in and of itself, imply penetration. Rather, as provided by Webster's dictionary, "into" is also defined as "to a position of contact with; against" as in "ran into a wall." MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY TENTH EDITION 613 (1998). Black's Law Dictionary states that while "into" "expresses passage from the outside of a thing to its interior," the word has also been "held equivalent to, or synonymous with `at[.]'". BLACK'S LAW DICTIONARY 822 (6th ED. 1991).
Testimony offered, and exhibits admitted at trial, indicated that the bullets penetrated the outer door. Moore's son, Gerloff, who was inside the trailer during the shooting, testified there were "two big holes on the outside of the door, by the door" and that the bullets lodged in the door jamb. The responding officer testified that there were two small caliber bullet holes in the door. The responding officer testified that Miller told him that she had fired "two well placed" shots at the door while the other officer testified that there were, in fact, two bullet holes in the door. Miller herself testified that she took two shots "at the lock" but denied that the lock was part of the door.
The use of the term "into" in the Section 571.030.1(3) does not require that the State prove that the bullets passed through the exterior of the dwelling into its interior airspace. Rather, the State must show that the projectile came into a "position of contact with or against" the dwelling. The evidence in this case clearly established that the bullets penetrated the exterior of the door, leaving bullet holes in the door itself, even though the bullets did not pass fully through the door to the interior of the trailer. Thus, the evidence was sufficient to establish that Miller shot the bullets "against" the door of the trailer, indeed, that the bullets passed "into" the door. In her brief, Miller acknowledges that "[a] door is part of a dwelling." This acknowledgement is supported by Black's Law Dictionary definition of "dwelling," as used in criminal law, to include the "building or a portion thereof." BLACK'S LAW DICTIONARY 505 (6th ED. 1991).
Accordingly, this court find that Miller's conviction for unlawful use of a weapon, pursuant to Section 571.030, was supported by sufficient evidence from which a reasonable juror could conclude that Miller was guilty beyond a reasonable doubt. Judgment affirmed. Rule 30.25(b).